IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MISHA TAYLOR | : | CIVIL ACTION |
| *By Her Natural Parent and Guardians* | : | |
| *Terrance Taylor and Johanne Louis* | : | No. 15-6682 |
| | : | |
| v. | : | |
| | : | |
| OFFICER JOSEPH MAZZONE, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                                 **August 12, 2016**

This civil rights action is about a schoolyard fight between Plaintiff Misha Taylor and a classmate, which led to Taylor being arrested and charged with a summary offense. Taylor alleges her arrest, detention, and subsequent charge violated the United States Constitution and state law. Defendants Upper Darby Police Officer Joseph Mazzone, Upper Darby Township, Upper Darby School District, and School District Employees Frances McElhenney, Gregory Manfre, and Daniel McGarry move to dismiss the Complaint for failure to state a claim.[1] The individual Defendants further assert they are entitled to qualified immunity. For the reasons set forth below, the Court will grant the motions and dismiss all counts of the Complaint for failure to state a claim.

---

[1] In Count I, Taylor asserts claim pursuant to 28 U.S.C § 1983 for false detention, arrest, and imprisonment, and malicious prosecution against Mazzone. Count II contains a failure to train, supervise, and discipline *Monell* claim against Upper Darby Township, while Count III contains a malicious prosecution claim asserted against Mazzone, and the School District Employees. Count IV asserts a state-created danger claim against the School District and its Employees, while Count V asserts a "deliberate indifference and willful misconduct" claim against the School District Employees only. Finally, Count VI contains an intentional infliction of emotional distress claim against Mazzone and the School District Employees.

**FACTS**[2]

At the time of the fight, Taylor attended Drexel Hill Middle School. Drexel Hill has a policy requiring students who arrive at school before 8:10 a.m. to wait outside in a parking lot. Even though the School District and its Employees were aware of students engaging in violent altercations in the parking lot, the children were not supervised by any School District employee.

On the day of the fight, December 20, 2013, Taylor was dropped off at school around 7:45 a.m. by her father. Shortly afterwards, one of her classmates arrived by school bus. This classmate called Taylor a "dyke." Other students joined in the name-calling and encouraged Taylor and her classmate to fight. The classmate physically attacked her, and Taylor defended herself by pushing the classmate off of her. Thereafter, the two students ceased fighting and lined up to enter the school. While the students were in line, a teacher asked other students to identify the fighters: several students pointed to Taylor and her classmate. The teacher escorted Taylor and her classmate to McElhenney's office, where they were instructed to write statements regarding the altercation. While they were writing their statements, Manfre directed McElhenney to call the Upper Darby Police.[3]

Officer Mazzone arrived at the school in response to McElhenney's call. He took Taylor's backpack and mobile phone, performed a body search, and then transported her to the police station. Taylor was searched again at the station and then made to wait in a locked room

---

[2] These facts are drawn from the Complaint and construed in the light most favorable to Taylor. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009).

[3] The Complaint does not identify the teacher who escorted the students to McElhenney's office, and while the Complaint identifies McElhenney and Manfre as employees of the School District, it does not provide their official titles. Furthermore, the Complaint fails to plead any facts pertaining to the third School District Employee, McGarry.

for an hour and half until her parents arrived. Taylor was charged with the summary offense of harassment, which was dismissed on April 8, 2014.

**LEGAL STANDARDS**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if a plaintiff pleads sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See id.* (citation omitted). In evaluating a Rule 12(b)(6) motion, a court first must separate the legal and factual elements of the plaintiff's claims. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 545. This standard requires more than "labels and conclusions" and a "recitation of a cause of action's elements." *See id.*

Government officials are entitled to qualified immunity for civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). An official is not entitled to qualified immunity if (1) the facts alleged by the plaintiff demonstrate a violation of a constitutional right, and (2) the right was clearly established at the time of the defendant's alleged misconduct. *See id.* at 232. A right is clearly established if "its

3

outlines are sufficiently clear that a reasonable officer would understand that his actions violate the right." *United Artists Theatre Cir., Inc. v. Twp. Of Warrington*, 316 F.3d 392, 399 (3d Cir. 2003) (quoting *Sterling v. Borough of Minersville*, 232 F.3d 190, 193 (3d Cir. 2000)). "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Pearson*, 555 U.S. at 244 (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999) (internal quotation marks omitted)).

## DISCUSSION

Because Taylor has failed to state a claim as to any of the counts pleaded in her Complaint, the Court will dismiss all counts against Defendants.

In Count I, Taylor asserts Mazzone violated her "constitutionally protected right to be secure in her person as provided by the 4th Amendment of the United States Constitution," Pl.'s Compl. ¶ 30, and pursues a claim under 28 U.S.C. § 1983 for false detention, arrest, and imprisonment. The Fourth Amendment ensures "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. Amend. IV. In order to state a claim for false arrest, detention, or imprisonment under § 1983, a plaintiff must allege (1) there was an arrest or a restraint (2) without adequate legal justification. *Gilbert v. Feld*, 788 F. Supp. 854, 862 (E.D. Pa. 1992); *see also White v. Andrusiak*, No. 14-7045, 2015 WL 4999492, at *4 n.6 (E.D. Pa. Aug. 19, 2015) (explaining a claim for false detention is another way of stating a claim for false imprisonment); *Brockington v. City of Phila.*, 354 F. Supp. 2d 563, 570 n.8 (E.D. Pa. 2005) (noting false arrest and false imprisonment are nearly identical claims and may be analyzed together).

An arrest made without probable cause lacks adequate legal justification. *See Quinn v. Cintron*, No. 11-2471, 2013 WL 5508667, at *3 (E.D. Pa. Oct. 3, 2013). When an arrest is made

with probable cause, however, it cannot serve as the basis for a claim of false detention, arrest, or imprisonment. *See id.* Valid probable cause for arrest exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (citation omitted); *see also Applewhite v. Twp. of Millburn*, No. 11-6957, 2013 WL 5574569, at *4 (D.N.J. Oct. 9, 2013) ("Statements by victims and witnesses can satisfy probable cause by creating circumstances where a reasonable officer would believe an offense has been committed.").

Taylor has failed to allege sufficient facts to show she was arrested without adequate legal justification or probable cause. In her Complaint, she concedes she was involved in a physical altercation with another student while waiting to enter school. *See* Compl. ¶ 20. After the altercation, she was identified by other students as having been fighting and was asked to write a statement. *Id.* ¶¶ 22-23. While she was writing the statement, McElhenney called the Upper Darby Police; as a result, Mazzone arrived at the scene and placed Taylor under arrest. *Id.* ¶¶ 24-25. These facts suggest Mazzone had legal justification to arrest Taylor; or, at the very least, the facts do not permit the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 445 U.S. at 678. And while Taylor pleaded Mazzone's arrest was "without warning, justification, or probable cause," the Court need not credit this legal conclusion. *See Fowler*, 578 F.3d at 210-11. Accepting all factual allegations in the Complaint as true, the Court concludes Taylor has failed to state a claim. *See Basile v. Twp. of Smith*, 752 F. Supp. 2d 643, 657 (W.D. Pa. 2010) (dismissing false arrest claim for failure to allege sufficient facts showing the defendants lacked probable cause to arrest); *Himchak v. Dye*, No. 14-2394, 2016 WL 1743056, at *7 (M.D. Pa. Apr. 8, 2016) (alleging an officer failed to interview the

plaintiff before pursuing charges was insufficient for the court to reasonably infer the officer acted without probable cause).[4] The Court will therefore dismiss Count I's false detention, arrest, and imprisonment against Mazzone without prejudice.[5]

In Count I, Taylor also brings a claim for malicious prosecution pursuant to § 1983 against Mazzone. In order to state such a claim, a plaintiff must allege "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007) (citation omitted).

Taylor's failure to plausibly plead Mazzone lacked probable cause to arrest her for harassment dooms her malicious prosecution claim. *See Wright v. City of Phila.*, 409 F.3d 595, 604 (3d Cir. 2005) (holding a plaintiff could not prevail on a malicious prosecution claim where

---

[4] Mazzone contends he had adequate legal justification, or probable cause, to take Taylor into custody for the summary offense of harassment, which a person commits "when, with intent to harass, annoy or alarm another, the person: strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same . . . ." 18 Pa. Cons. Stat. § 2709(a)(1). Mazzone, however, relies on cases in the summary judgment posture. *See, e.g.*, *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 (granting summary judgment because a "reasonable jury could not find that [the police officer] lacked knowledge of sufficient facts to establish probable cause to arrest" since he possessed "a credible report from a credible eyewitness"); *Hoefer v. Bd. of Educ. of Enlarged City Sch. Dist. of Middletown*, No. 10-3244, 2013 WL 126238, at *8 (S.D.N.Y. Jan. 9, 2013) (granting officer summary judgment because he had valid probable cause based on reliable witness statements and other information he obtained after arriving at the scene of the arrest). At this stage, the Court need not make a definitive finding as to whether probable cause to arrest existed in order to grant Mazzone's motion to dismiss, and indeed, believes it would be premature to do so as no factual record has been developed.

[5] As a result, the Court will not reach the qualified immunity analysis here or in any count.

6

her false arrest claim failed because she could not show the officers lacked probable cause to arrest her).

Additionally, Taylor has failed to allege she suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. Taylor alleges she was deprived of liberty by being held in custody *before* charges were filed against her. *See* Compl. ¶¶ 26-27 (alleging Taylor waited for an hour and a half before being released to her parents and "was thereafter charged under the Pennsylvania Criminal Code"). Malicious prosecution permits damages for deprivations of liberty imposed pursuant to legal process only. *Johnson*, 477 F.3d at 82; *see also Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995) (noting a seizure effectuated pursuant to legal process is ordinarily either in the form of (1) an arrest pursuant to a warrant or (2) post-arraignment deprivations of liberty, and holding an arrest prior to arraignment and performed without a warrant could not serve as a predicate deprivation of liberty for a malicious process claim); *Roberts v. Caesar's Entertainment, Inc.*, 72 F. Supp. 3d 575, 581 (E.D. Pa. 2014) ("[T]he time between arrest and the lodging of formal charges is not a basis for a malicious prosecution claim."). Because Taylor's arrest was not pursuant to a warrant and her alleged detention occurred prior to the filing of formal charges, neither can serve as the predicate for a malicious prosecution claim and Taylor's malicious prosecution claim against Mazzone will be dismissed with prejudice. *Laufgas v. Patterson*, 206 F. App'x 196, 197 (3d Cir. 2006) (declaring the plaintiff's claim "fatally deficient" as his arrest and two-hour detention was not pursuant to a warrant and occurred prior the filing of any criminal complaint).[6]

---

[6] Even if Taylor's hour-and-a-half detention were a consequence of a legal proceeding, such a brief detention—without more—does not constitute a deprivation of liberty under the Fourth Amendment. "Pretrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005) (requiring attendance at pretrial and trial hearings without additional restrictions is

In Count II, Taylor alleges Upper Darby Township is subject to *Monell* liability for failing to train, discipline, or supervise Mazzone, who has engaged in a pattern of unconstitutionally arresting and searching juveniles. Upper Darby Township moves for dismissal of Count II for failure to state a claim.

Because 28 U.S.C. § 1983 does not impose respondeat superior liability on municipalities, a municipality is liable only if a plaintiff alleges an official policy or custom was the moving force behind the constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978); *see also McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) ("Policy is made when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law." (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original))).

In order to establish a *Monell* claim for failure to train, discipline, or supervise, a plaintiff must also allege the municipality's inadequate policy or custom "reflects a 'deliberate indifference' to the rights of its inhabitants." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 390 (1989); *see also Jewell v. Ridley Twp.*, 497 F. App'x 182, 186 (3d Cir. 2012) (applying the deliberate indifference standard to failure to supervise claim); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997) (applying the deliberate indifference standard to failure to

---

not a seizure). *Compare Gallo v. City of Phila.*, 161 F.3d 217, 219, 222 (3d Cir. 1998) (noting it was a "close question" but ultimately concluding the plaintiff was seized within the meaning of the Fourth Amendment because, post-indictment, he was required to post a $10,000 bond, contact Pretrial Services on a weekly basis, and attend all court hearings, and he was restricted from travelling outside of a two-state area), *with Wiltz v. Middlesex Cty. Office of Prosecutor*, 249 F. App'x 944, 949 (3d Cir. 2007) (holding the plaintiff was not deprived of liberty, even though she was arrested, because she failed to allege she was incarcerated or endured any other post-indictment deprivations of liberty as a result of a legal proceeding).

discipline claim). Demonstrating deliberate indifference "typically requires proof of a pattern of underlying constitutional violations," *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004), although a single incident can be enough if the need for more or different training is so obvious and an inadequacy so likely to result in the violation of a constitutional right, *City of Canton*, 489 U.S. at 390 & n.10 (explaining the need to train officers on the use of deadly force is so obvious and an inadequacy so likely to result in a constitutional violation). And finally, a plaintiff must allege the custom or policy *caused* the constitutional violation. *See id.* at 392; *Carswell*, 381 F.3d at 244.

Taylor's Complaint does not allege facts describing a "specific policy or custom, or how . . . the claimed constitutional violation . . . occur[ed], [by] identifying the policymaker or decision, or [by] showing prior notice through a pattern of similar constitutional violations." *Wood v. Williams*, 568 F. App'x 100, 105 (3d Cir. 2014).[7] Instead, Taylor baldly asserts the "Township and its police department, as a matter of policy and practice failed to discipline, train, supervise or otherwise sanction Mazzone who ha[s] violated the rights of citizens by arresting juveniles and subjecting them to unconstitutional body searches when absolutely no probable cause exists to arrest the aforementioned juveniles," Compl. ¶ 36, and the "Township and its police department as a further matter of policy and practice failed to train Mazzone, with respect to the constitutional, statutory and department limits of their authority including refraining from

---

[7] The *Wood* plaintiff alleged, in part, the defendant "developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of [its] employees," such as a "policy and/or custom to inadequately screen during the hiring process and to inadequately train, retrain and/or supervise employees." 568 F. App'x at 104. In affirming the district court's dismissal of the plaintiff's failure to train or supervise claim, the Third Circuit noted the plaintiff's complaint merely restated the elements of the cause of action. *Id.*

unlawfully arresting juveniles," *id.* ¶ 37.[8] Taylor's mere restatement of the cause of action without identifying a specific policy or custom, or a decisionmaker, entitles the Township to dismissal of Count II. *See McTernan*, 564 F.3d at 658 (affirming dismissal of *Monell* claim for failure "to identify a custom or policy, and specify what exactly that custom or policy was" and for failure "to allege conduct by a municipal decisionmaker").

Even assuming the zero tolerance policy were a Township policy enacted by an official decision maker, Taylor has failed to allege the Township's failure to train, supervise, or discipline Mazzone reflected a deliberate indifference to her constitutional rights, resulting in her ultimate injury. *See City of Canton*, 489 U.S. at 388-90; *Logan v. Bd. of Educ. of Sch. Dist. of Pitt.*, No. 15-499, 2015 WL 5971198, at *14-15 (W.D. Pa. Oct. 14, 2015) (dismissing failure to train claim because the plaintiff failed to plausibly allege the defendants' acquiescence in a longstanding custom of deliberate indifference caused the plaintiff's sexual assault by a former school district police officer). While Taylor conclusorily alleges the Township and its police department were on notice of Mazzone's alleged unlawful past arrests of juveniles, she alleges no facts supporting a pattern of constitutional violations.[9] And she alleges no facts indicating the School District's zero tolerance policy was so likely to result in a constitutional violation such that the need for additional training, supervision, or discipline was obvious. Because Taylor does

---

[8] The Complaint does allege Mazzone has abused the School District's "zero tolerance" policy to justify unlawful and unconstitutional arrests of juveniles, *see* Compl. ¶ 36, and when pressed to identify the municipal policy or custom being challenged at oral argument, Taylor's counsel identified the District's zero tolerance policy. Taylor however does not plead the zero tolerance policy was enacted by a Township—rather than School District—decisionmaker or acquiesced to as a matter of practice by the Township. *See Rees v. Office of Children & Youth*, 473 F. App'x 139, 143 (3d Cir. 2012) (dismissing the complaint for failing "to link the alleged offending policies or customs to anyone with within [the defendant organization] who had policy-making authority").

[9] Indeed, at oral argument, Taylor's counsel conceded he had no evidence or facts to support this allegation against Mazzone.

not adequately plead facts reflecting the Township's alleged failure to train, supervise, or discipline constituted deliberate indifference to her constitutional rights, the Court will dismiss Count II without prejudice. *See Buonadonna v. Se. Delco Sch. Dist.*, No. 14-2708, 2015 WL 2365629, at *12 (E.D. Pa. May 18, 2015) (finding the plaintiff "merely alleg[ed] the existence of prior incidents, without more detail about those incidents, [which] is not enough to survive a Rule 12(b)(6) motion").

In Count III, Taylor brings both § 1983 and "common law" malicious prosecution claims against Mazzone and the School District Employees. Defendants assert Taylor has failed to state a claim, and the Court agrees.

Taylor's § 1983 malicious prosecution claim as to Mazzone is duplicative of the claim alleged in Count I and will likewise be dismissed with prejudice. As for Taylor's common law claim, the elements of malicious prosecution in Pennsylvania are identical to the elements of the federal claim, except a plaintiff need not allege a deprivation of liberty. *See Napier v. City of New Castle*, 407 F. App'x 578, 583 (3d Cir. 2010).[10] Therefore, Taylor's failure to plausibly plead Mazzone lacked probable cause to arrest her is also fatal to her state law malicious prosecution claim. But because Taylor could possibly plead Mazzone lacked probable cause to arrest, this claim will be dismissed without prejudice.

---

[10] In Pennsylvania, the common law tort has been codified as a statutory cause of action under the Dragonetti Act. *See Matter of Larsen*, 616 A.2d 529, 587 (Pa. 1992) (citing 42 Pa. Conn. Stat. §§ 8351-54). The elements of the statutory cause of action are identical to those of the common law tort. *See id.* (identifying as the statutory elements the following: "the defendant must have instituted civil proceedings against the plaintiff without probable cause, with malice, and [the] proceedings must have terminated in favor of the plaintiff").

Taylor's federal constitutional and state law malicious prosecution claims against McElhenney, Manfre, and McGarry are similarly infirm.[11] As for the § 1983 claim, Taylor has against failed to allege she suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding and this claim will be dismissed with prejudice. *See Johnson*, 477 F.3d at 82; *Singer*, 63 F.3d at 117. As for Taylor's state law claim, the Court finds Taylor does not adequately plead the School District Employees acted with malice or improper purpose, a necessary element of the claim.

The Complaint asserts these Defendants had no probable cause to initiate the criminal charges against Taylor and "acted maliciously when they manufactured false evidence against Taylor and knowingly used [it] in an attempt to secure a wrongful criminal conviction against Taylor." Compl ¶¶ 40-41. While malice may be inferred from the absence of probable cause, *see Matter of Larsen*, 616 A.2d at 587, a showing of malice "requires more than mere conclusory allegations; it cannot be asserted without corroborating factual specificity." *See Felker v. Christine*, 796 F. Supp. 135, 142 (M.D. Pa. 1992); *see also Galligani v. N.Y. Cty. Reg'l Police Dep't*, No. 10-1136, 2012 WL 5386131, at *6 (M.D. Pa. Nov. 1, 2012) (concluding the plaintiff's characterization of a statement made by the defendant—"[we] had to charge Plaintiff with something"—as malicious was nothing more than a "bald assertion" insufficient to plead malice).

Taylor has failed to adequately plead these Defendants lacked probable cause—or acted maliciously—in initiating criminal charges against her: the Complaint alleges Taylor was escorted by a teacher to McElhenney's office who learned which students had been fighting from other students, and while Taylor was writing her statement, McElhenney asked Manfre to call the

---

[11] In fact, the Complaint is devoid of any facts indicating McGarry was involved at all.

12

police. It would be reasonable to infer the unnamed teacher communicated information about the fight to McElhenney and/or Manfre. Taylor further fails to allege with factual specificity what false information Defendants allegedly manufactured against Taylor to charge her with harassment. Because the Court cannot rely upon Taylor's legal conclusion that Defendants acted with malice, the Court will dismiss Count III's state law malicious prosecution claim against Manfre, McGarry, and McElhenney without prejudice.[12]

In Count IV, Taylor alleges the School District and School District Employees' policy of having children wait without supervision in the parking lot until the school doors are unlocked constitutes a state-created danger. Generally, the Fourteenth Amendment's Due Process Clause imposes no affirmative duty on a state actor to protect individuals against private harms. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). An exception to this rule exists, however, "if the state's own actions create the very danger that causes the plaintiff's injury." *Morrow v. Balaski*, 719 F.3d 160, 167 (3d Cir. 2013). To state a claim under this theory, a plaintiff must allege "(1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts . . . ; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger

---

[12] Because the Court finds the claim fails on the malice element, the Court need not address the other elements of the claim. Nevertheless, the Court observes Manfre or McElhenney may be said to have initiated proceedings against Taylor. *See Hess v. Lancaster Cty.*, 514 A.2d 681, 683 (Pa. Commw. Ct. 1986) (citing Restatement (Second) of Torts § 653 cmt. g) (noting an individual who expresses a desire to have proceedings initiated "by direction, request[,] or pressure of any kind" and is "the determining factor in the [prosecutor's] decision to commence the prosecution" initiates the proceeding if he or she knowingly provides false information).

than had the state not acted at all." *Id.* at 177 (quoting *Bright v. Westmoreland Cty.*, 443 F.3d 276, 281 (3d Cir. 2006)).

The School District Employees move to dismiss this claim as an official capacity suit duplicative of the claim against the School District. Official capacity suits are "another way of pleading an action against an entity of which an officer is an agent" and "should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citation omitted). Although the Complaint does not clearly state whether suit is brought against the School District Employees in their official or individual capacities, insofar as Taylor brings an official capacity suit against the Employees, the Court agrees such a suit "is functionally . . . against the public entity that employs them" and will dismiss Count IV as to them with prejudice. *See Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006) (dismissing an official capacity claim against individual defendants as redundant where the plaintiff also sued the municipality employing the defendants). Insofar as Taylor brings state-created danger claims against the School District Employees in their individual capacities and against the School District, the claims will be dismissed for failure to plead an affirmative action by a state actor causing Taylor's injuries.

"Failures to act cannot form the basis of a valid § 1983 claim." *Bennett ex rel. Irvine v. City of Phila.*, 499 F.3d 281, 288 (3d Cir. 2007); *see also Morrow*, 719 F.3d at 178 ("[A]ttempts to redefine clearly passive inaction as affirmative acts" are also insufficient). To plead the fourth element of the state-created danger claim, Taylor instead must allege the School District Employees and/or School District engaged in an affirmative act creating a danger to Taylor or rendering her more vulnerable to danger. *See Morrow*, 719 F.3d at 177. The affirmative act, moreover, must be pleaded as the "but for cause" of Taylor's harm. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 432 (3d Cir. 2006) (noting "a specific and deliberate exercise of state authority" is

14

necessary, but not sufficient to satisfy this element, as "[t]here must be a direct causal relationship between the affirmative act of the state and plaintiff's harm").

Taylor fails to plausibly plead this fourth element. Taylor unsuccessfully attempts to characterize the School District's refusal to allow students to enter the school building as an affirmative act. Rather, the Complaint alleges Defendants placed Taylor in harm's way by "preventing her from entering her middle school building . . . while knowing . . . students remained outside the school building unsupervised in an environment which created juvenile conflict and altercation" and maintaining an "affirmative protocol of having hundreds of children, unsupervised and congregating in front of the middle school." Compl. ¶¶ 44-45. The crux of Taylor's claim, therefore, is Defendants were aware of the danger posed by allowing unsupervised children to congregate outside of the middle school—and did nothing about the danger. *See* Pl's Response to Defs.' Mot. to Dismiss 16.

No affirmative duty to protect arises from a state actor's mere knowledge of an individual's predicament. *See Bennett ex rel. Irvine*, 499 F.3d at 288; *Sanford v. Stiles*, 456 F.3d 298, 312 (3d Cir. 2006) ("As we have stated many times, mere failure to protect an individual . . . does not violate the Due Process Clause." (alteration in original) (citation and internal quotation marks omitted)). Courts have repeatedly held a school district's placement of or failure to remove a student in a situation known to be dangerous is insufficient to state an affirmative act. *See, e.g.*, *Brown v. Sch. Dist. of Phila.*, 456 F. App'x 88, 91 (3d Cir. 2011) (holding a school district's failure to provide one-on-one supervision as promised for student with a moderate intellectual disability was not an affirmative act creating the danger which led to her sexual assault by fellow students or making her more vulnerable to it); *Mohammed v. Sch. Dist. of Phila.*, 196 F. App'x 79, 82 (3d Cir. 2006) (failing to provide surveillance cameras or a full

complement of security officers at a persistently-dangerous high school was not an affirmative act placing student who was punched in a stairwell in a position of increased danger); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 915 (3d Cir. 1997) (affirming dismissal of claim because the plaintiff-teacher failed to allege the defendants used their authority to place her in "a dangerous environment" or a "unique confrontational encounter" with the man who killed her). *See also Crockett v. Se. Pa. Transp. Ass'n*, No. 12-4230, 2013 WL 2983117, at *7 (E.D. Pa. June 14, 2013) ("[D]ecisions to forgo remedying known hazards are not affirmative acts for purposes of state-created danger claims."). Based on the factual scenario alleged in the Complaint, it appears Taylor will be unable to allege the affirmative use of authority by a state actor creating a danger or making her more vulnerable to danger, the Court will dismiss Count IV against the School District and the School District Employees with prejudice.[13]

In Count V, Taylor asserts a "deliberate indifference and willful misconduct" claim against the School District Employees. Although Taylor fails to identify the legal basis for this claim, the pleading in Count V echoes the malicious prosecution and the state-created danger claims asserted against these Defendants in Counts III and IV respectively. The Court will dismiss Count V with prejudice, therefore, for the same reasons it will dismiss Counts III and IV.

Finally, Taylor asserts a claim for intentional infliction of emotional distress against Mazzone and the School District Employees in Count VI. In order to state a claim for intentional

---

[13] Even if the School District's refusal to allow students to enter the building or "protocol" of having students congregate outside were affirmative acts, Taylor does not plead the refusal or protocol were the "but for" cause of her complained-of injuries. Because the Complaint does not sufficiently allege the School District affirmatively used its authority in a manner forming the "but for cause" of danger to Taylor or rendering her more vulnerable to danger, the Court has an additional basis for dismissing Count IV against the School District and the School District Employees. *See Kaucher*, 455 F.3d at 433 (granting summary judgment to the defendant because its alleged failure to improve jail conditions and to educate and warn the plaintiff about infection prevention was neither an affirmative act, nor the "but for" cause of the plaintiff's MRSA infection, which was caused by the plaintiff's choice to remain employed at the jail).

infliction of emotional distress under Pennsylvania law, a plaintiff must allege "(1) the defendant's conduct was extreme and outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress is severe. *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979). Extreme and outrageous conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Francis X. Cheney, II v. Daily News L.P.*, --- F. App'x ---, 2016 WL 3902639, at *4 (3d Cir. 2016) (quoting *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)). "It is for the court to determine in the first instance whether the conduct is extreme and outrageous, such that recovery may be permitted." *Id.* (citing *Small v. Juniata College*, 682 A.2d 350, 355 (Pa. Super. Ct. 1996)).

Taylor alleges Defendants' illegal detention and arrest of her, which "constituted an assault and battery," was extreme and outrageous. Compl. ¶ 53. The Court agrees with Defendants this conduct fails to rise to the requisite level of outrageousness to state a claim for intentional infliction of emotional distress. "Pennsylvania courts have found extreme and outrageous conduct only in the most egregious of situations, such as mishandling of a corpse, reckless diagnosis of a fatal disease, and having sexual contact with young children." *Francis X. Cheney, II*, --- F. App'x ---, 2016 WL 3902639, at *4; *see also Dull v. W. Manchester Twp. Police Dep't*, 604 F. Supp. 2d 739, 755 (M.D. Pa. 2009) (arresting, with excessive force, a mother and grandmother whom the police had probable cause to believe were taking inappropriate photos of a child was not so appalling or reprehensible as to rise to extreme and outrageous conduct, even though the plaintiffs were ultimately cleared of wrongdoing).[14]

---

[14] Taylor contends she has alleged enough to withstand Defendants' motions to dismiss, as her alleged psychological symptoms are similar to those alleged by the plaintiffs of two cases— *Walker v. North Wales Borough*, 395 F. Supp. 2d 219 (E.D. Pa. 2005), and *O'Fee v. City of*

Because Taylor pleads no facts consistent with an allegation of extreme and outrageous conduct, and it appearing to the Court she will be unable to plead facts rising to the requisite level of outrageousness, the Court will dismiss Count VI against Mazzone and the School District Employees with prejudice.[15]

**CONCLUSION**

For the reasons set forth above, the Court will grant Mazzone and the Township's motion to dismiss Counts I, II, III, and VI for failure to state a claim; the School District Employees' motion to dismiss Counts III, IV, V, and VI for failure to state a claim; and the School District motion to dismiss Count IV for failure to state a claim.

An appropriate order follows.

---

*Philadelphia*, No. 09-2724, 2009 WL 3172759 (E.D. Pa. 2009)—in which the court denied Rule 12(b)(6) motions to dismiss. However, even if Taylor has adequately pleaded severe emotional distress, Taylor has not adequately pleaded Defendants' conduct was extreme and outrageous.  In both *Walker* and *O'Fee*, the plaintiffs alleged extreme and outrageous conduct with significantly more specificity than Taylor does. *See O'Fee,* 2009 WL 3172759, at *7 (alleging the police prosecuted the plaintiff, a former police sergeant, in retaliation for cooperating with an investigation into police corruption and explaining in detail how Defendants initiated the prosecution); *Walker*, 395 F. Supp. 2d at 232 (alleging the police officers tackled the plaintiff and threw him to the ground, handcuffed him, took him into custody for a significant amount of time, accused him of being drunk, and required him to perform two Breathalyzer examinations, all without probable cause, causing severe harm to the plaintiff). Taylor alleges no facts indicating Mazzone or the School District Employees assaulted and battered her, and the Court is unaware of any case law indicating an arrest automatically constitutes assault or battery, or is per se outrageous and extreme conduct. *See Moore v. Vangelo*, 222 F. App'x 167, 172 (3d Cir. 2007) (noting the "reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery").

[15] The unnumbered count following Count VI is captioned "intentional infliction of emotional distress damages" and is pleaded against Mazzone, School District Employees, the Township, and the School District. *See* Compl. ¶¶ 55-57. Despite the caption, based on the allegations of these paragraphs, the Court believes this section was mislabeled and pleads Taylor's damages. Insofar as Taylor intended to bring an intentional infliction of emotional distress claim against the Township and the School District, it would fail for the same reasons articulated above.